UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JENNIFER J. ELDRED,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-08-00149-JPH

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on November 14, 2008. (Ct. Rec. 14, 16). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney David Blume represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 9.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 14.)

**JURISDICTION**

Plaintiff protectively filed applications for SSI benefits and Title II benefits on November 4, 2004, alleging onset as of

October 1, 2001. (Tr. 62-64, 295-297.) The applications were denied initially and on reconsideration. (Tr. 47-48, 51-53, 286-288, 290-293.) Administrative Law Judge (ALJ) Richard A. Say held a hearing on August 2, 2007. (Tr. 326-343.) Plaintiff, represented by counsel, her companion/roommate Samantha Liljestrand, and vocational expert Diane Kramer testified. On October 9, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 23-35.) The Appeals Council denied a request for review on April 15, 2008. (Tr. 4-6.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on May 7, 2008. (Ct. Rec. 1,4.)

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was 28 years old at the time of the hearing and has a high school education. (Tr. 329.) She has worked as a cook/fryer, dishwasher, and security guard. (Tr. 338.) Plaintiff’s DIB application alleges disability as of October 1, 2001, due to bipolar disorder, a blood disorder, and juvenile epilepsy. (Tr. 67.) After the initial denial, plaintiff alleged she additionally suffers from scoliosis, ADHD, breast lumps, migraines and “seizure jolts daily.” (Tr. 125.)

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability"

as the “inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed

impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which

plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction (DAA) is not a contributing factor material to disability. *Ball v. Massanari*, 254 F. 3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423 (d)(2)(C)and 1382(a)(3)(J); *Sousa v. Callahan*, 143 F. 3d 1240, 1245 (9th Cir. 1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether the DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether substance abuse is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs.

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is

not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial

evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At the outset the ALJ found plaintiff was last insured through September 30, 2002, for purposes of her DIB claim. (Tr. 25.) The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since onset. (Tr. 25.) At steps two and three, the ALJ found that plaintiff suffers from seizure disorder, borderline intellectual functioning, and personality disorder, impairments that are severe but do not meet or medically equal a Listed impairment. (Tr. 25, 30-31.) The ALJ found plaintiff less than fully credible. (Tr. 33-34.) The ALJ assessed plaintiff's RFC, which included several non-exertional limitations. (Tr. 31.) At step four, the ALJ asked a vocational expert if someone with plaintiff's background and limitations could perform any of her past work. The VE answered that plaintiff's RFC is consistent with performing past work as a dishwasher. The ALJ relied on this testimony and found plaintiff not disabled at step four. (Tr. 35.)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law when he determined credibility and weighed the medical evidence. Specifically, plaintiff alleges the ALJ failed to properly assess (1) the credibility of plaintiff and her roommate;

(2) the limitations caused by plaintiff's seizure disorder; and (3) the June and November 2006 evaluations by Gary J. Lauby, Ph.D. Plaintiff further alleges ALJ Say failed to include all of the limitations assessed by consulting physician James E. Bailey, Ph.D., in the hypothetical he [the ALJ] asked the VE. (Ct. Rec. 15 at 9-15, Ct. Rec. 18.)

The Commissioner responds that the ALJ appropriately weighed the evidence and asks that the decision be affirmed. (Ct. Rec. 17 at 6.)

## DISCUSSION

### A. Weighing medical evidence

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the

ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F. 3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

Plaintiff contends that the ALJ erred when he weighed the June and November 2006 evaluations by Dr. Lauby. (Ct. Rec. 15 at 13-14.) The Commissioner responds that the ALJ's stated reason for rejecting these opinions - that they are inconsistent with the balance of psychological reports in the record - is specific, legitimate and supported by substantial evidence. (Ct. Rec. 17 at

10-11.)

With respect to Dr. Lauby's first evaluation, the ALJ states, in part:

> The claimant reported experiencing seizures that were violent and frequent, only partially controlled in the past by Depakote. She reported being raped at the age of 18 and psychiatrically hospitalized at that time. She also reported a history of treatment for [ADHD], but stated none of the drugs worked for her and she turned to street drugs, an amphetamine know[n] as "CR" about six years ago, using for three years. She stated she stopped using the drug 10 years ago without participation in formal treatment. She stressed she had been drug free for 10 years. She reported a blood disorder since birth, but never required treatment. She believed she had scoliosis . . .
>
> She stated she was in special education classes throughout her years in school due to her [ADHD], but graduated from high school. . . She enrolled in college but dropped out after one semester. She last worked 2½ years ago. She lived with her roommate and was able to care for herself unless she was having seizures. . .
>
> Her full scale [IQ] score placed her in lower limit of the average range of intellectual functioning. [Plainitff's] Trailmaking . . Part B performance fell into the defective range. MMPI-2 responses were significantly distorted, possibly by reading errors and/or exaggerated complaints. Dr. Lauby diagnosed learning disorder, [nos], [ADHD, nos], depressive disorder, nos, personality disorder with paranoid features, and a GAF of 60. Prognosis appeared guarded. Her cognitive limitations would likely result in moderate limitations. Social factors were severe. Neuropsychological examination was recommended.

(Tr. 28-29, citing Exhibit 10F at Tr. 229-236; see also Exhibit 14F at Tr. 264-270.)

The ALJ summarizes Dr. Lauby's assessed limitations:

"Dr. Lauby opined at Exhibit 10F that the claimant had severe interpersonal problems, with marked and severe restrictions in work-related functioning. These restrictions are inconsistent with the balance of the psychological reports in the record, as

outlined above. Therefore, little weight is given to Dr. Lauby's opinion in this matter." (Tr. 34.)

The other psychological reports to which the ALJ refers include the March 23, 2005, report of Scott Mabee, Ph.D., who opined after evaluation and testing that plaintiff appears to have adequate cognitive and social abilities for self-sufficiency in the community. (Tr. 34, relying on Tr. 179.) The ALJ relied on the August 2005 opinions of examining psychologists Kayleen Islam-Zwart, Ph. D, and Mahlon Dalley, Ph.D., who opined after testing that "there did not appear to be any psychological reason" plaintiff would be precluded from employment. (Tr. 27, 34, relying on Exhibit 8F at Tr. 215-222.) The ALJ observes that these professionals opined plaintiff's Global Assessments of Functioning[1] is 65 and 70, respectively, indicating only mild symptoms in social or occupational functioning. (Tr. 27.)

To aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found her less than fully credible. (Tr. 33-34.) Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

---

[1]A GAF (Global Assessment of Functioning) of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION (DSM-IV), at p. 32.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the c1aimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

The ALJ relied on several factors when he assessed credibility, including plaintiff's inconsistent statements. The ALJ compared plaintiff's testimony that she did not know the number of seizures she experienced (because she had no memory afterward) with the numerous times plaintiff specified the number of seizures she had experienced, including 4 in 6 months (Exhibit 4F), 2 per month (Exhibits 5F, 12F, 13F), and 1-2 per week (Exhibits 6E, 8E.) (Tr. 33.) The ALJ noted that while plaintiff told Dr. Lauby her seizures were violent and frequent, she did not give this description to other examining professionals, including Charles Brondos, M.D., a neurologist. (Tr. 33.)

The ALJ notes that plaintiff has described disabling seizures

preventing employment. Yet, at the time of the examination by Drs. Islam-Zwart and Dalley, plaintiff indicated she was working part-time, denied any problems working, and believed she could work full time if the opportunity arose. (Tr. 33.) The ALJ observes that early in the record [mainly prior to 2007] plaintiff failed to comply with taking prescribed anti-convulsant medication, presumably due to cost, although as noted in 2005, she worked part-time. (Tr. 33.) The ALJ points out that in August of 2006, plaintiff told Dr. Brondos her last seizure was a month earlier. Thereafter, she was "seen several times in the emergency room with various pain complaints (Exhibit 15F) and did not mention any seizures." (Tr. 33.) The ALJ also considered plaintiff's exaggerated scores on the MMPI-2 on two occasions, and her inconsistent reports of substance abuse and periods of unemployment. (Tr. 33-34.)

The ALJ notes plaintiff's daily activities included carrying out home chores, animal care, and self care; working part-time (under SGA levels) providing concert security; involvement with a group of friends; taking the bus or walking to her destinations; camping for fun; being in a committed relationship for two years; shopping alone or with her roommate, and making her own financial decisions. (Tr. 26-27.) Even under the higher standard, the ALJ gave clear and convincing reasons, supported by substantial evidence, for finding plaintiff less than fully credible. The record as a whole does not support plaintiff's argument that the ALJ improperly considered plaintiff's medication noncompliance (due to an inability to pay for medication) when he assessed her credibility.

When he assessed the conflicting medical evidence, the ALJ considered the record as a whole. His stated reasons for discounting some of Dr. Lauby's assessed limitations are specific, legitimate, and supported by substantial evidence. They include ALJ Say's decision to adopt the milder limitations assessed by examining psychologists Drs. Mabee, Islam-Zwart, and Dalley.

Plaintiff alleges that the ALJ failed to give germane reasons for discounting the credibility of plaintiff's roommate, as required. (Ct. Rec. 15 at 13.) The Commissioner answers that the ALJ discounted this testimony for the same reasons as plaintiff's, namely, contradictory medical evidence and inconsistent statements. (Ct. Rec. 17 at 9-10.)

The ALJ noted Ms. Liljestrand's testimony that she has seen plaintiff have about 15-20 seizures a month since September of 2003. According to her testimony, a seizure lasts about 15 minutes. Plaintiff's eyes roll back, she drops to the floor, and she bites her tongue. Plaintiff is very disoriented after a seizure and does not remember it or her surroundings. The seizures have improved somewhat, but not significantly. Ms. Liljestrand indicated the longest time without a seizure is a week. (Tr. 33.) The ALJ observes:

"This high number of seizures [15-20 a month since September of 2003] would prevent all work, however, the record shows that she has been able to obtain jobs throughout the period at issue here." (Tr. 33.) As the Commissioner observes, the ALJ also compared plaintiff's earlier complaints of seizures (at the time she alleged she could not afford medication) with her later lack of seizure complaints while taking anti-convulsant medication

(Keppra). (Ct. Rec. 17 at 8-9, referring to Tr. 33-34, 279-284.) Both are germane reasons, supported by the record, for discrediting the lay testimony.

**B. Hypothetical**

Plaintiff argues ALJ Say erred by omitting limitations assessed by consulting psychologist James Bailey, Ph. D., in his hypothetical question to the VE. (Ct. Rec. 15 at 14-15.) The Commissioner responds that the ALJ properly relied on the narrative report rather than the check box form, and any error in omitting their "preclusion on high levels of cooperation" is harmless since a dishwasher/kitchen helper is unskilled work requiring insignificant people skills. (Ct. Rec. 17 at 12-13.)

Plaintiff's argument is based on an incomplete reading of the record. In assessing plaintiff's RFC, ALJ Say opined plaintiff is capable of some multi-step tasks, can do concrete tasks with few academic demands, is capable of only superficial public interaction, and responds slowly to change. (Tr. 31, 340.) These limitations are basically consistent with Dr. Bailey's narrative opinion. (Tr. 213.) The only omission by the ALJ is Dr. Bailey's limitation that plaintiff "could work around others, but not with high levels of cooperation." (Tr. 213.) With respect to Dr. Bailey's report, ALJ Say stated:

"The opinions of the non-examining State Agency consultants tend to support the undersigned's conclusions [see Exhibits 6F - Fuller, M.D. and 7F - Bailey]; however, additional evidence was received subsequent to their opinions, including testimony at the hearing, making a new determination necessary in this case." (Tr. 34.)

ALJ Say's analysis is consistent with the approach approved recently by *Stubbs-Danielson v. Astrue*, 539 F. 3d 1169 (9th Cir. 2008):

> The ALJ translated Stubb-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him - Dr. Eather's recommended restriction to "simple tasks." This does not, as [plaintiff] contends, constitute a rejection of Dr. McCollum's opinion. Dr. Easther's assessment is consistent with Dr. McCollum's 2005 MRFCA, which found [plaintiff] is "not significantly limited" in her ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and sustain an ordinary routine without special supervision.

*Stubbs-Danielson*, 539 F. 3d at 1174. The Court noted that an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony. (*Id.*)

ALJ Say's RFC and hypothetical incorporated restrictions consistent with the medical evidence. He indicated that he was not relying solely on the opinions of the consultants; rather, on all of the evidence. Even if omitting Dr. Bailey's limitation on high levels of cooperation could properly be considered error, it appears harmless in this case because all of plaintiff's limitations relevant to unskilled work were included in the ALJ's hypothetical.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in

determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405 (g).

The ALJ weighed the evidence as a whole and concluded plaintiff would be able to perform her past relevant unskilled work as a dishwasher. The ALJ's assessment of the medical and other evidence is supported by the record and free of legal error.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 22nd day of December, 2008.

s/ James P. Hutton

JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE